IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTONIO L. FARROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11cv666-CSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

On February 14, 2008, the plaintiff, Antonio L. Farrow, protectively filed a Title II application for social security disability insurance benefits, alleging disability beginning April 1, 2001. (R. 156). The claim was denied initially on April 1, 2008. (R. 92). On April 28, 2008, Farrow requested a hearing before an administrative law judge ("ALJ"). (R. 90). *See* 20 C.F,R. 404.929 *et seq*. The claimant appeared and testified at a hearing held on November 24, 2009, in Montgomery, Alabama, before ALJ Steven L. Carnes. (R. 36). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review on July 15, 2011. (R. 1). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[1] The case is now before the court for

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Farrow was born on August 18, 1976. (R. 42). Farrow completed high school through the twelfth grade. (R. 43). He served in the Navy from 1994 through 1996 and received an honorable medical discharge after a soldier stabbed him multiple times over a personal dispute. (R. 43, 47, 248). His past relevant work experience includes employment as a machinist, fast food cook, and knitter. (R. 44-47). For purposes of eligibility for social security disability insurance, Farrow was last insured through June 30,

2006. (R. 160).

Following the hearing, the ALJ concluded that Farrow had the following severe impairments: "post traumatic stress disorder (["PTSD"]), left radial neuropathy, hypertension, asthma, and cluster migraine headaches." (R. 16). The ALJ further concluded that Farrow's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 17). The ALJ determined that, through June 30, 2006, Farrow had the residual functional capacity

> to perform medium work as defined in 20 CFR 404.1567(c) with the following exceptions/considerations: He can continuously use his right hand for repetitive action such as in simple grasping, the pushing and pulling of arm controls, and for fine manipulation, and frequently use his left hand for repetitive action such as in simple grasping, the pushing and pulling of arm controls, and for fine manipulation. He can frequently use his feet for repetitive movement such as in the pushing and pulling of leg controls. He can occasionally climb, kneel, crouch, and crawl; frequently stoop and balance; frequently reach overhead with his right arm and occasionally reach overhead with his left arm. He can never work around unprotected heights; frequently work around moving machinery and drive automotive equipment; and occasionally work around exposure to marked changes in temperature and humidity and exposure to dust, fumes, and gasses. The claimant experiences a moderate degree of pain. Further, the claimant has a mild inability to respond appropriately to supervision; a mild inability to respond appropriately to co-workers; a mild inability to respond appropriately to customers or the general public; no inability to use judgement in simple 1 or 2 step work related decisions; a mild inability to use judgement in complex work related decisions; a mild inability to deal with changes in a routine work setting; no inability to understand, remember, or carry out simple instructions; a mild to moderate inability to understand, remember, or carry out complex instructions; a mild inability to maintain concentration, persistence, or pace for periods of at least 2 hours; a mild inability to maintain social functioning; no inability to maintain activities of daily living, and no episodes of decompensation each of extended duration.

(R. 18-19).

The ALJ concluded that Farrow was able to return to his past relevant work as a machinist, knitter, and cook. (R. 27-28). Therefore ALJ concluded that Farrow was not disabled. (R.29).

    **B. Plaintiff's Claims.** As stated by the plaintiff, the primary issues are as follows:

1. Whether the ALJ erred by disregarding the opinion of Farrow's treating physician without stating "good cause" for doing so; and

2. Whether the ALJ erred by failing to accord substantial weight to the VA's determination of unemployability.

(Pl's Br. at 3).

### III. Discussion

**A.  The ALJ erred by disregarding the opinion of Farrow's treating physician without stating "good cause" for doing so.**

Farrow suffers from PTSD as a result of an incident in which another soldier stabbed him while he was on active duty in the navy. (R. 353-54). Dr. Maria R. Tabino, a psychiatrist, has treated Farrow for PTSD since October, 2001. (R. 353-54, 593-94). Over the years (including prior to June 30, 2006, the date Farrow was last insured), Farrow's PTSD symptoms have included nightmares, flashbacks, irritability, depression, and lack of sleep. (*See*, *e.g.*, R. 353-54, 432, 512-13, 554-55). On March 22, 2009, Dr. Tabino treated Farrow and made the following notes:

> The veteran says that he sleeps only six hours. Sleep is intermittent. He does not do anything in daytime. He still has nightmares three times a week. He is depressed but not anhedonic. He does not have the attention span to keep still

> two to three hours. He used to work as a machinist. He still cannot lift heavy objects due to his medical problems. He cannot get along with people that he works with and had physical confrontation with them due to anger. He cannot concentrate, has problems sleeping, having more nightmares. He now complains of memory deficits. He can watch TV and forget what he saw. He can go to the kitchen and forget his intention. Lately getting more depressed. . . .
>
> . . . . His nightmares and intermittent sleep makes drowsy the next day and cannot concentrate at work. . . . He still has irritability, intrusive thoughts, exaggerated startle response, still socially isolated. Insight and judgment are adequate. He is coming in for followup and compliant with medication. He has document[s] to be filled and signed.

(R. 686-87, 792-96) (sic).

On March 20, 2009, Dr. Tabino filled out a "Disability Questionnaire" in which she stated that she did not believe Farrow was capable of working a full-time job due to a permanent medical condition. (R. 854). Dr. Tabino then described Farrow's medical condition as follows:

> Patient still has nightmares/flashbacks which can recur frequently depending on stressor watching news then has difficulty sleeping which causes fatigue, inability to concentrate at work & main problem is anger has physical confrontation at work can't get along with co-employee supervisor and was fired.[3]

(R. 854) (sic).

Dr. Tabino further stated on the "Disability Questionnaire" that Farrow's medical condition has existed "since Oct. 2, 2001 but onset of PTSD was 1995." (R. 854) (sic).

Whenever a treating physician, such as Dr. Tabino, offers a statement reflecting

---

[3][Farrow last worked in 2001, when he was employed as a machinist for approximately 1 week. (R. 44).]

6

judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is a medical opinion requiring the ALJ to state with particularity the reasons for the weight given to it. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011); *see also* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinions'). The ALJ must give the opinion of the treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997). Dr. Tabino's opinions, as stated in the "Disability Questionnaire," and her March 22, 2009, treatment notes clearly include statements about the nature and severity of Farrow's medical condition. However, *nowhere* in the ALJ's opinion did he explain his reason for discounting Dr. Tabino's opinion that Farrow is significantly limited in his ability to concentrate and to get along with others. Rather, in finding that Farrow's PTSD did not prevent him from performing his past relevant work, the ALJ relied heavily on a consulting physician (Dr. Estock) and on the hearing testimony of a non-examining, non-treating psychologist (Dr. Sydney Garner, Psy. D.). (R. 22-23, 26, 27). The opinions of Dr. Estock and Dr. Garner are inconsistent with Dr. Tabino's opinion that, since October 2001, Farrow has been significantly limited in his ability to concentrate and to get along with co-workers and supervisors. (R. 22, 23).

The Commissioner argues that Dr. Tabino's opinion is not entitled to substantial weight as a treating physician's medical opinion and because Dr. Tabino opined that Farrow was unable to work. *See* 20 C.F.R. § 404.1527(d) (a physician's statement that a claimaint

is "unable to work" is not a medical opinion). However, Dr. Tabino not only stated that she considered Farrow to be unable to perform full-time work (an statement that does not qualify as a medical opinion, *see id*.), but she also specifically provided an opinion as to "the nature and severity of [Farrow's] impairment(s), including symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions," which *does* qualify as a medical opinion. *See* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinions'). Accordingly, there is no merit to the Commisioner's argument that the ALJ was not required to address Dr. Tabino's opinion at all. *Wenschel*, 631 F.3d at 1179 ("The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a 'medical opinion,' but this argument ignores the language of the regulations.").

Dr. Tabino's opinion, which the ALJ completely failed to mention, is flatly inconsistent with the ALJ's determination that Farrow has "a mild inability to respond appropriately to co-workers; a mild inability to respond appropriately to customers or the general public; . . . a mild inability to deal with changes in a routine work setting; no inability to understand, remember, or carry out simple instructions; a mild to moderate inability to understand, remember, or carry out complex instructions; a mild inability to maintain concentration, persistence, or pace for periods of at least 2 hours; [and] a mild inability to maintain social functioning." (R. 19). If the ALJ considered and discounted Dr. Tabino's opinion as to Farrow's ability to concentrate and get along with others in the workplace, he provided no explanation for the weight, or lack thereof, that he assigned to that opinion.

8

Without a clear explanation of the ALJ's treatment of Dr. Tabino's opinion, this court cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (holding that, when the ALJ disregards a treating physician's opinion without articulating any cause for doing so, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *see also Dempsey v. Comm'r of Soc. Sec.*, 454 Fed. Appx. 729, 733 (11th Cir. 2011) ("Without a clear explanation of the ALJ's treatment of Dr. Janush's opinion [of the claimant's ability to concentrate], we cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence."); *Winschel*, 631 F.3d at 1179 ("The ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight.' Likewise, the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. It is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.").

The Commissioner argues that any error in the ALJ's failure to mention Dr. Tabino's opinion was "harmless error" because, the ALJ contends, the record contains evidence that would have supported a decision by the ALJ to accord little weight to Dr. Tabino's opinion. However, the harmless error rule is inapplicable under the circumstances of this case. "When the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'"

9

the reviewing court cannot affirm "'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).  Rather, the ALJ's failure to address Dr. Tabino's opinion is reversible error. *See Winschel*, 631 F.3d at 1179 ("[W]ithout clearly articulated grounds for such a rejection [of the treating physician's opinion], we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence. Accordingly, we reverse.").

Citing *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), Farrow argues that, in light of the ALJ's failure to explicitly evaluate Dr. Tabino's opinion, this court must accept Dr. Tabino's opinion as true and order that benefits be awarded.  *See MacGregor*, 786 F.2d at 1053 ("Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.").  However, the court notes that, in *MacGregor*, the treating physician's testimony was neither inconsistent nor at odds with other evidence in the record. *Id*. at 153-54.  In this case, however, conflicting evidence exists as to whether Dr. Tabino's opinion is consistent with her own notes and with the record as a whole.  *See*, *e.g.*, (R. 536) (Dr. Tabino's July 21, 2003, note that she "[e]ncouraged [F]arrow to volunteer at any place to have something to do in the daytime" and that Farrow "is now sleeping through the night unlike before although he still has the nightmares"); (R. 499) (Dr. Tabino's October 18, 2004 note that Farrow has "no memory or cognitive impairment," "sleep is fair," and "has nightmares on and off it's no longer bothersome" (sic)).  In addition, Dr. Tabino's opinion is inconsistent with the

10

opinions of Dr. Estock and Dr. Garner. *Cf. Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (holding that "good cause" exists for rejecting the opinion of a treating physician when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."). In light of the conflicting evidence, for this court to accept Dr. Tabino's opinion from the "Disability Questionnaire" as true and order the Commissioner to award benefits to Farrow at this juncture would amount to reweighing the evidence, which this court cannot do. *See Phillips*, 357 F.3d at 1240 n. 8 (holding that the reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]"); *see also Dempsey*, 454 Fed. Appx. at 732 n.5 (holding that, because *MacGregor* was a panel decision that deviated from prior panel decisions, "rather than accept the ignored treating doctor's opinion as true and remand for the award of benefits, we remand to the agency to determine in the first instance the proper weight to be afforded the treating doctor's opinion.").

Accordingly, the ALJ's opinion is due to be remanded with instructions to consider and explain the weight accorded to Dr. Tabino's opinion. *See Winschel*, 631 F.3d at 1179 (reversing the Commissioner's decision to deny benefits where the ALJ failed to articulate grounds for rejecting a treating physician's opinion, and remanding with instructions that, "[o]n remand, the ALJ must explicitly consider and explain the weight accorded to the medical opinion evidence").

## II.     The ALJ failed to adequately explain his rejection of the VA's finding that Farrow is unemployable.

The Veterans' Administration ("VA") has assigned Farrow a service-connected disability rating of 60 percent; however, the VA has also determined that Farrow is "totally and permanently disabled" and it has awarded disability benefits to Farrow at the 100-percent disability rate. (R. 217). *See* 38 C.F.R. § 4.16 ("Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.").

Farrow argues that the ALJ failed to accord "substantial weight" to the VA's disability determination. *See Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) ("Although the [VA]'s disability rating is not binding on the [Commissioner], it is evidence that should be given great weight."). However, the ALJ expressly stated that he "accorded substantial weight" to the VA's disability assessment. (R. 26). Accordingly, there is no merit to Farrow's argument that the ALJ failed to accord substantial weight to the VA's disability determination.

### V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. It is further

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after she receives notice of

any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).

*See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 n.1 (11th Cir. 2008).

    A separate order will issue.

    Done this 11th day of December, 2012.

                                  /s/Charles S. Coody
                              CHARLES S. COODY
                              UNITED STATES MAGISTRATE JUDGE